IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JODI L. SUSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16 C 5450 |
| ) | |
| PNC BANK, NATIONAL ASSOCIATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jodi L. Suson, a financial sales consultant, began a new job with PNC Bank in July 2012. Though Suson hoped that the position would be a step forward in her financial career, it ultimately put her on a path leading to this Court, as Suson alleges that PNC failed to pay her the commissions and overtime pay that she says she earned. Specifically, she alleges violations of the Fair Labor Standards Act (FLSA), the Illinois Minimum Wage Law (IMWL), and the Illinois Wage Payment and Collection Act (IWPCA), as well as breach of contract. PNC has moved for summary judgment.

### Background

Prior to her employment at PNC, Suson worked at Chase Bank, which she considered to be "the best bank on the planet[.]" Suson Dep. at 107.[1] She claims she was drawn away from Chase by the promises made in a job interview at PNC. Two

---

[1] Suson's deposition transcript is joined by a number of other documents in Defendant's Exhibit 1. Citations to the deposition are cited as 'Suson Dep.' and use the page numbers of the deposition document. Other citations to the exhibit are cited as 'Def. Ex. 1' and use the ECF page numbers. These citations are followed by a parenthetical explaining the document being cited.

PNC interviewers, Suson alleges, promised her several benefits, most notably that she would earn a commission for all sales of financial products that she referred, even if she didn't possess the license required by federal regulation to sell those products directly.

Based upon what she perceived to be the agreement formed during her interview, Suson agreed to join PNC. In her letter of employment, however, was a provision stating that Suson's sales awards would be administered under the incentive program standard to all PNC financial employees. Suson did not review the terms of the program after receiving the letter, but if she had, she would have found that they were markedly different from her stated expectations. Under the standard program, Suson was only eligible for awards for products that she possessed a license to sell—which excluded a number of products that required a Series 7 or Series 65 license, neither of which Suson possessed.

Compensation relating to Suson's overtime work became another area of disagreement. Suson alleges she had to work overtime from home because the volume of her work was impossible to complete during normal hours, the computer that she was supposed to use lacked tools like Microsoft Office, and the time that PNC promised to make available for her to study during the workday for her to study to obtain a Series 65 license was constantly interrupted by customer requests. Suson says that her managers were opposed to her reporting this overtime. Suson has testified that she was "requested by management not to enter [her] time." *Id.* at 53. Her manager, John Acklam, wanted her to "shuffle and bury [her] overtime," as the overtime hours would increase costs for his branch. *Id.* at 54. Suson disagreed with the idea that her manager "wanted [her] to make sure that [she] didn't work over 40 hours"—she asserts

he just "wanted to make sure it didn't [affect] his cost center." *Id.* Suson claims that she worked 15 hours or more of overtime per week.

PNC disputes Suson's claims. It argues that it had no commission agreement with Suson other than the standard incentive program it uses with all of its financial specialists. It argues that Suson never reported working overtime hours on her timesheets while she was employed. It claims that it had no way to know Suson was working overtime and thus should not be obligated to pay.

## Discussion

PNC has moved for summary judgment on Suson's claims. A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party "must affirmatively demonstrate, by producing evidence that is more than merely colorable, that there is a genuine issue for trial" to avoid summary judgment. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A plaintiff's deposition testimony can be used to show a genuine dispute of material fact. *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 814 (7th Cir. 2017).

In its motion, PNC requests summary judgment on Suson's two claims: (1) PNC violated the IWPCA by failing to pay her commission and (2) PNC violated the FLSA and IMWL by failing to pay her overtime.

**I.     IWPCA claim**

Suson claims that PNC violated the IWPCA by withholding commission payments it owes under the agreement made at her job interview. 820 ILCS 115/4. There is a genuine factual dispute concerning the existence of an agreement with PNC formed during her hiring interview. The IWPCA applies to compensation claims based upon "agreements," not just contracts. *Id.* § 2. The term "agreement" is broader than a contract and requires only the mutual assent of two or more parties. *Zabinsky v. Gelber Grp., Inc.*, 347 Ill. App. 3d 243, 249, 807 N.E.2d 666, 671 (2004). Suson's deposition testimony regarding the agreement she says she reached with representatives of PNC at her hiring interview is sufficient to permit a reasonable jury to find that an agreement was formed at that time.

The Court agrees with PNC, however, that the undisputed facts demonstrate that Suson assented to the terms of the standard incentive plan once she began working at PNC. The standard plan modified whatever broader agreement she entered into at the time she was hired. In Illinois, an at-will employment contract may be modified by either side, because "continued performance by both parties serves as acceptance by one side and consideration by the other side." *Schoppert v. CCTC Int'l, Inc.*, 972 F. Supp. 444, 447 (N.D. Ill. 1997).

When Suson received her letter of employment from PNC, it stated that her compensation would be calculated using the standard incentive program. The letter does not mention the agreement Suson claims she established. Def. Ex. 1 at 149 (PNC's letter of employment to Suson). Suson's continued performance constituted her acceptance of the terms of the letter of employment, and her continued employment

4

constituted consideration from PNC. *Schoppert*, 972 F. Supp. at 447. For this reason, the standard incentive program controlled her commission payments. Because no reasonable jury could find that Suson was entitled to any commission payments other than those specified by the terms of the standard incentive plan, the Court concludes that there is no genuine dispute for trial. The Court grants PNC summary judgment on Suson's commission payment claim.

## II.  FLSA / IMWL claim

Suson claims that PNC has violated the FLSA, 29 U.S.C. § 207, and IMWL, 820 ILCS 105/4a, by failing to pay for overtime work of which it was aware. PNC offers three arguments against Suson's claim. First, PNC contends that Suson's claim should be limited to the five weeks described in her complaint. Second, PNC argues that Suson has failed to show the existence of a genuine factual dispute regarding PNC's claimed failure to compensate her for overtime work. Third, PNC argues that Suson's claim is barred by the two-year statute of limitations for non-willful FLSA violations. Suson contends that her claim should be considered under the three-year standard for willful violations of the FLSA. Because the determination of willfulness turns on whether an overtime violation occurred at all, the Court considers PNC's statute of limitations argument after PNC's argument for summary judgment.

### A.  Scope of claim

PNC argues that Suson's claim should be limited to the five workweeks in June 2013 and March 2014 described in her complaint. The Court declines to do so. There is no indication that this accounting described the limits of her claim. Under Federal Rule of Civil Procedure 8(e), "[p]leadings must be construed so as to do justice."

5

Though the complaint may be inelegantly drafted, it does not limit Suson's overtime claim to the specific weeks it references. PNC does not argue that it has been denied discovery regarding the entirety of Suson's claim as she now describes it, and it does not explain how it otherwise would be unfairly prejudiced by construing her claim to cover the full scope of what she claims.

**B.     Uncompensated overtime hours**

Because courts use the same analysis to decide FLSA and IMWL claims, *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 784 (N.D. Ill. 2011), the Court, for ease of reference, will only discuss the FLSA. The FLSA requires "employers [to] pay for all work they know about . . . ." *Allen v. City of Chicago*, 865 F.3d 936, 938 (7th Cir. 2017). To survive summary judgment, Suson must offer evidence that would permit a reasonable jury to find that (1) she performed overtime work and (2) PNC actually or constructively knew of the work. *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 173, 177 (7th Cir. 2011).

PNC describes Suson's overtime claims as "vague allegations." Def.'s Mem. at 10. But Suson supports her allegations through deposition testimony and several e-mails, which is sufficient to preclude entry of summary judgment. To cite but one example, Suson offers an e-mail with an attachment that she prepared, time-stamped at 10:32 p.m. Def. Ex. 1 at 434 (e-mail from Jodi Suson to John Acklam and other managers). Suson further buttresses her overtime allegation by describing the inadequacies at her office that forced her to work from home. She alleges her managers assigned her projects requiring the use of Microsoft Office software, but that she was unable to use a computer with the software available while at the PNC office.

Suson Dep. at 58 ("The reason it could only be produced on my [home] computer was because PNC did not provide any software that is similar or even Microsoft Word, PowerPoint, Excel, or any software that's like those applications . . . that would allow me to do my job."). Because of her managers' expressed views about overtime work, Suson left these hours unreported. *Id.* at 55. These allegations are sufficient to permit a reasonable jury to find that she performed overtime work for which she was not paid.

PNC next argues it was unaware that Suson was engaged in overtime work. FLSA "stops short of requiring the employer to pay for work it did not know about, and had no reason to know about." *Allen*, 865 F.3d at 938. PNC argues that Suson's managers were unaware of the extent of her overtime work, as Suson was not reporting her overtime hours. Suson Dep. at 52-53.

The evidence Suson presents demonstrates that the issue of whether PNC knew of her overtime work is a genuine one for trial. Suson testified that her manager, John Acklam, asked her to "shuffle and bury [her] overtime," in order to keep costs down at his branch. *Id.* at 54. Suson specifically denied that her manager was simply trying to keep her from working overtime hours. *Id.* Rather, she states that she was "requested by management not to enter [her] time," and that her manager "did not want [her] to report it" because "[i]t goes against his cost center" and "he didn't want to go over budget." *Id.* at 53, 54, 55. Suson also argues that her managers had to know of her overtime work, as she was asked to complete projects that required the use of Microsoft Word and other tools that her office computer lacked. *Id.* at 58. Finally, Suson claims that PNC guaranteed her set-aside hours to study at the bank for her Series 65 exam, but a stream of customers and interruptions forced her to study at

7

home. *Id.* at 176. Given Suson's testimony about her manager's conduct and directions, as well as the circumstances in which she worked, there is a genuine factual dispute regarding PNC's knowledge that she was working overtime but not being paid for it.[2]

Because Suson has offered evidence sufficient to permit a reasonable jury to find that (1) she performed overtime work and (2) PNC actually or constructively knew of the work, PNC is not entitled to summary judgment on Suson's overtime claim.

## C. Statute of limitations

The statute of limitations under the FLSA is two years, unless the violation is "willful," in which case there is a three-year period. 29 U.S.C. § 255(a). The statute of limitations under the IMWL is three years. 820 ILCS 105/12(a). Suson filed this lawsuit on May 20, 2016. As an initial matter, the Court holds that Suson is time-barred from any claim for overtime work that accrued more than three years from the date of filing her complaint, that is, before May 20, 2013. *Nehmelman v. Penn. Nat. Gaming, Inc.*, 790 F. Supp. 2d 787, 792 (N.D. Ill. 2011) (an FLSA claim accrues with each new paycheck).

PNC argues that Suson's FLSA claims should be further limited to the two-year statute of limitations, because she cannot show a genuine dispute of fact regarding a "willful" violation. A violation of the FLSA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the

---

[2] Suson also cites *Bell v. PNC Bank*, 800 F.3d 360 (7th Cir. 2015), as further evidence of PNC's knowledge of her overtime work. But in *Bell*, a decision affirming class certification, the Seventh Circuit made no finding that PNC had a policy of unpaid overtime work. *Id.* at 379-80 ("*If* the class prevails in demonstrating that PNC had an unofficial policy or practice that required employees class-wide to work off-the-clock overtime hours . . . .") (emphasis added).

8

statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S.128, 133 (1988). The plaintiff bears the burden of demonstrating that a violation is willful. *Bankston v. State of Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995). In a motion for summary judgment, the plaintiff must present sufficient evidence for a reasonable factfinder to conclude that PNC knew or recklessly disregarded the fact that Suson was working overtime hours and not receiving compensation. *Raimondi v. Central DuPage Hosp.*, No. 15 C 7780, 2017 WL 1178513, *6 (N.D. Ill. Mar. 30, 2017).

There is a genuine factual dispute regarding whether PNC knew or showed reckless disregard for whether it violated the FLSA. Suson testified during her deposition that her managers were keenly aware of their obligations to pay higher wages for overtime work. Suson Dep. at 54 (Suson describing her manager's concerns about the impact of overtime on his "cost center"). Moreover, the PNC overtime policy expressly acknowledges that managers must "make[] certain that nonexempt employees are paid for all overtime hours worked in compliance with the Federal Fair Labor Standards Act (FLSA) and similar state laws." Def. Ex. 1 at 158 (PNC overtime plan). Suson testified that one manager, John Acklam, told her that "[she] was not allowed to put in that time," as the increased overtime hours would affect the bank's budget. Suson Dep. at 55. Thus a genuine factual dispute exists regarding whether PNC willfully violated the FLSA. For that reason, determination of which FLSA statute of limitations applies is, in this case, a decision for the jury. *Bankston*, 60 F.3d at 1253.

## Conclusion

For the foregoing reasons, the Court grants the defendant's motion for summary judgment [dkt. no. 29] in part and denies it in part. PNC is entitled to summary

9

judgment on Suson's IWPCA claim for commissions, but the Court denies PNC's motion with respect to Suson's FLSA / IMWL claim for unpaid overtime.

                                                                               _____
                                                                                MATTHEW F. KENNELLY
                                                                              United States District Judge

Date: October 3, 2017